**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:   OTERO COUNTY HOSPITAL ASSOCIATION,              Case No. 11-11-13686 JA
         INC., (d/b/a Gerald Champion Regional Medical
         Center, d/b/a Mountain View Catering),

         Debtor.

CADY LANDRUM,

         Plaintiff,

v.                                                        Adversary No. 15-1016 J

OTERO COUNTY HOSPITAL ASSOCIATION,
INC., (d/b/a Gerald Champion Regional Medical
Center, d/b/a Mountain View Catering), and
SURGIT MOOLAMALLA,

         Defendants.


OTERO COUNTY HOSPITAL ASSOCIATION,
INC., (d/b/a Gerald Champion Regional Medical
Center, d/b/a Mountain View Catering),

         Counterplaintiff,

v.

CADY LANDRUM,

         Counterdefendant.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on cross motions for summary judgment. [1]  Plaintiff

Cady Landrum (referred to hereinafter as "Plaintiff" or Ms. Landrum) filed a complaint in state

---

[1] *See* Plaintiff's Motion for Summary Judgment (Docket No. 14); Defendants' Motion for Summary Judgment
(Partial) ("Defendants' Summary Judgment Motion") (Docket No. 16); Defendants' Opposition to Plaintiff's Motion
for Summary Judgment (Docket No. 18); Plaintiff's Response to Defendants' Motion for Summary Judgment
(Docket No. 17); Plaintiff's Reply in Further Support of her Motion for Summary Judgment (Docket No. 19);
Defendants' Reply in Support of Motion for Summary Judgment (Partial) (Docket No. 22); Plaintiff's Sur-Reply to
Defendants' Motion for Summary Judgment (Docket No. 23).

court against Dr. Surgit Moolamalla in the Twelfth Judicial District Court, Otero County, State of New Mexico as Case No. D-1215-CV-2014-0605 (the "State Court Action"). In this adversary proceeding, she seeks a declaratory judgment determining, among other things, that the State Court Action is not subject to the automatic stay, does not violate the discharge injunction, and is not enjoined by the injunction imposed by the terms of the plan confirmed in the Chapter 11 bankruptcy case ("Bankruptcy Case") filed by Defendant Otero County Hospital Association, Inc., (d/b/a Gerald Champion Regional Medical Center, d/b/a Mountain View Catering) (the "Hospital").[2]

The issues raised in the cross-motions for summary judgment can be reduced to the following: 1) whether the injunction language contained in Section 14.20 of the Hospital's confirmed Third Amended Chapter 11 Plan of Reorganization dated June 20, 2012 for Otero County Hospital Association, Inc. and the order confirming the plan (together, the "Plan") bars Ms. Landrum's claims against Dr. Moolamalla; and 2) whether the pre-confirmation notice to Ms. Landrum of the then proposed injunction satisfies due process requirements. The Hospital and Dr. Moolamalla (together "Defendants") assert that Ms. Landrum's State Court Action claims are enjoined by the Plan.[3] Ms. Landrum disagrees and contends that neither the terms of

---

[2] *See* Complaint for Declaratory Judgment that (1) the Automatic Stay, the Discharge Injunction, and Section 14.20 of the Debtor's Confirmed Plan do not Affect Plaintiff's Case against Dr. Moolamalla; (2) Plaintiff's Failure to File Evidence of a Claim Against the Debtor does not Constitute Waiver of the Claim Against Dr. Moolamalla; and (3) Plaintiff has not Willfully Violated Debtor's Bankruptcy Stay ("Complaint"). *See* Docket No. 1. The Complaint contains five counts for declaratory judgment. Defendants Hospital and Surgit Moolamalla asserted four counter-claims against Plaintiff: two counts for declaratory relief (Counts I and II); a claim for damages for contempt of court (Count III); and a claim for breach of contract (Count IV). *See* Answer to Complaint for Declaratory Judgment and Related Counterclaims ("Answer and Counterclaims") (Docket No. 4).

[3] Defendants also seek summary judgment on Count IV of their counterclaims, except with respect to damages. *See* Docket No. 16. In Count IV, Defendants assert that the confirmed plan constitutes a contract between the Hospital and its creditors, including Plaintiff, and that Plaintiff's filing of the State Court Action and failure to dismiss the State Court Action in violation of the terms of the confirmed plan constitutes a breach of contract. *See* Answer and Counterclaims – Docket No. 4.

the Plan nor the discharge injunction bars such claims. She asserts further that she is not bound by the Plan because she did not receive notice of the Plan.

For the reasons explained below, the Court concludes that Ms. Landrum's claims fall within the language of the injunction set forth in Section 14.20 of the Plan (the "Plan Injunction").[4] The facts not subject to genuine dispute also establish that Ms. Landrum received the notices in question, including notice of the final hearing on confirmation of the Plan and notice of the deadline to file administrative claims. However, fact issues raise additional due process concerns that prevent the Court from granting summary judgment in favor of either party.

## SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Fed.R.Civ.P. 56, will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)). "When the parties file cross motions

---

[4] This conclusion and any findings or other conclusions predicated on Dr. Moolamalla's status as an employee of the Hospital at all relevant times, is subject to Ms. Landrum having a further opportunity to dispute such employment status. *See* discussion at pages 6 – 7 below.

for summary judgment, '. . . [the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.,* 132 F3d 1316, 1319 (10th Cir. 1997)).   The party opposing summary judgment "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir. 1996)).  *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that the opposing party "must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence) (internal quotation marks omitted).

*Ms. Landrum's Request to Strike Defendants' Supporting Declarations*[5]

Defendants offered the following declarations in support of their request for summary judgment:  1) Declaration of Kelli Dion in Support of Defendants' Motion for Summary Judgment ("Dion Declaration"); 2) Declaration of Andrew C. MacIntosh in Support of Defendants' Motion for Summary Judgment ("MacIntosh Declaration"); and 3) Declaration of Michael J. Paque in Support of Defendants' Motion for Summary Judgment ("Paque Declaration").  *See* Exhibits A, B, and C to Defendants' Summary Judgment Motion – Docket No. 16.  Rule 56(c)(4), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056,

---

[5] Rule 56(c) contemplates that a party support a request for summary judgment by declaration. *See* Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P.7056 ("A party asserting that a fact cannot be  . . . genuinely disputed must support the assertion by . . . affidavits *or declarations* . . .") (emphasis added).   For purposes of Rule 56, a declaration subscribed as true under penalty of perjury is an adequate alternative to a signed affidavit witnessed by a notary public. *See Richardson v. Gallagher,* 553 Fed.Appx. 816, 827 (10th Cir. 2014) (unpublished) (discussing the current requirements of Rule 56, which no longer uses the word "sworn").

requires a declaration in support of a request for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). Ms. Landrum requests the Court to strike the Dion Declaration and the Paque Declaration on grounds that they are not based on personal knowledge, lack foundation, violate the best evidence rule, and contain hearsay. *See* Plaintiff's Response – Docket No. 17.

*The Dion Declaration*

The Dion Declaration recites that Ms. Dion is the Director of Quality at Gerald Champion Regional Medical Center ("GCRMC"), which is owned and operated by the Hospital. The Dion Declaration purports to establish that Dr. Moolamalla was employed by the Hospital at all relevant times and provided medical services at GCRMC, including at its Center for Women's Health; that the Center for Women's Health is located on the GCRMC main campus accessible from GCRMC's main building through a covered hallway; and that Ms. Landrum's claims asserted against Dr. Moolamalla in the State Court Action arose at a time when Dr. Moolamalla was employed by the Hospital.

In their reply brief, instead of explaining why Ms. Dion is competent to make the statements contained in the Dion Declaration, Defendants offered the Declaration of Surgit Moolamalla in Support of Defendants' Motion for Summary Judgment ("Dr. Moolamalla Declaration"). *See* Docket No. 22 – Exhibit A. In the Dr. Moolamalla Declaration, Dr. Moolamalla states, among other things, that he was employed by the Hospital from approximately March 17, 2011 through approximately March 20, 2013; that during that time he performed medical services exclusively in his capacity as an employee and on behalf of the Hospital; that he provided medical treatment to Ms. Landrum in August 2011 at the Center for

-5-

Women's Health; and that the Center for Women's Health is part of the obstetrics and gynecology department of GCRMC and is located on the GCRMC campus.

Pursuant to Rule 56(e), the Court may give a party who has failed to properly support an assertion of fact an opportunity to do so. Consistent with the summary judgment requirements of Rule 56, the Tenth Circuit has recognized that the Court "clearly has discretion to permit supplemental affidavits it finds useful for summary judgment determination." *Lighton v. Univ. of Utah,* 209 F.3d 1213, 1227 (10th Cir. 2000). Here, Defendants have offered the Dr. Moolamalla Declaration in response to Ms. Landrum's assertion that Ms. Dion lacked sufficient personal knowledge to make the statements contained in her declaration. "'Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues.'" *Stevens v. Water District One of Johnson Cnty.,* 561 F.Supp.2d 1224, 1232 (D.Kan. 2008) (quoting *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1134 (7th Cir. 1996)). Similarly, where a supplemental affidavit "is simply a beefed-up version of the affidavit previously filed and responds directly to issues raised by plaintiffs regarding the validity of the original . . . affidavit" it is appropriate for the Court to consider the affidavit if it is helpful to the Court. *Vakas v. Transamerica Occidental Life Ins. Co.,* 242 F.R.D. 589, 593 (D. Kan. 2006).

If the Court had decided to grant summary judgment, it would have given Ms. Landrum the opportunity to file a surreply to dispute Dr. Moolamalla's Declaration. Since summary judgment is being denied, the Court will treat as an established fact, for purposes of Defendants' motion for summary judgment only, that Dr. Moolamalla at all material times was an employee of the Hospital and performed the procedures on Ms. Landrum of which she complains in the

-6-

course of that employment. Ms. Landrum will be given the opportunity to controvert that "fact" later in this adversary proceeding.

*The Paque Declaration*

The Paque Declaration states, among other things, that Mr. Paque is a director of Corporate Restructuring of Kurtzman Carson Consultants, LLC ("KCC"); that KCC is the official claims, noticing, and balloting agent for the Hospital appointed in the Bankruptcy Case; that he has access to KCC's records concerning service of notices in the Bankruptcy Case; and that he is knowledgeable about KCC's general practices and procedures used to effect service in chapter 11 cases. *See* Paque Declaration, ¶¶ 2, 3. The Paque Declaration also states, among other things, that Mr. Paque reviewed the list of patients on the confidential service list in Bankruptcy Case and that Ms. Landrum is included on that list with an address of P.O. Box 897, La Luz, New Mexico. *See* Paque Declaration, ¶¶ 5 and 6. Finally, the Paque Declaration states that each time a notice was served in the Bankruptcy Case on the confidential patient mailing list, the notices were sent to Ms. Landrum at the P.O. Box in La Luz, New Mexico. *See* Paque Affidavit, ¶¶ 6 and 7.

Ms. Landrum complains that Mr. Paque lacks personal knowledge of the matters contained in the Paque Declaration, and that, in any event, the Paque Declaration falls short of establishing that the notices from the Bankruptcy Case were properly addressed, stamped, and mailed to Ms. Landrum. The Court will deny Ms. Landrum's request to strike the Paque Declaration. As Director of KCC with access to the records concerning service by KCC in the Bankruptcy Case, Mr. Paque has sufficient personal knowledge of the customary procedures KCC followed in the ordinary course of its regularly conducted business activity as a noticing agent in Chapter 11 cases, and in sending notices in the Bankruptcy Case, including the names

and persons contained on the service list KCC used to send notices in the Bankruptcy Case. *See In re Petroleum Prod. Mgmt., Inc.,* 240 B.R. 407, 412 (Bankr.D.Kan. 1999) ("The sender can carry the burden of proving proper mailing by showing that customary and normally effective mailing procedures were followed." "[T]he individual employee who performed that function need not testify.") (citing *Bd. of Cnty. Comm'rs of Saline Cnty., Kansas v. Coleman American Properties, Inc. (In re American Properties, Inc.),* 30 B.R. 239, 243 (Bankr.D.Kan. 1983)).[6] Further, as Defendants point out, the Paque Declaration merely confirms what is already contained in the record of the Bankruptcy Case in the form of affidavits of service filed by KCC for the various notices served in the Bankruptcy Case. *Cf. Cincinnati Ins. Co. v. Nelson (In re Nelson),* 2002 WL 32667216, *3 (Bankr.D.Kan. Feb. 26, 2002) (taking judicial notice of the certificates of service in the official case file to show that notices were sent to creditor). *See also Van Woudenberg ex rel. Foor v, Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946 (10th Cir. 2001) (noting that "the court is permitted to take judicial notice of its own files and records, as well as facts which are matter of public record.") (citation omitted).

FACTS NOT SUBJECT TO GENUINE DISPUTE

The following facts are not subject to genuine dispute:

1.    The Hospital operates GCRMC in Alamogordo, New Mexico.

2.    The Hospital filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 16, 2011 thereby commencing the Bankruptcy Case (the "Petition Date").

3.    The Plan contains the following provision:

> On the Effective Date and except as otherwise provided in the Plan, all Persons who have been, are, or may be holders of Claims against the Debtor shall be

---

[6] In *American Properties,* the bankruptcy court stated that "the mailing employee need not testify." 30 B.R. at 238 (citation omitted).

permanently enjoined from taking any of the following actions against or affecting the Debtor, the Estate, the Assets or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):

(i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgement, award, decree or order . . .

Plan, Section 14.20. The above provisions together are called the "Plan Injunction."

4.       The Hospital confirmed the Plan on August 7, 2012. *See* Order Confirming the

Third Amended Chapter 11 Plan of Reorganization dated June 20, 2012 for Otero County

Hospital Association, Inc. ("Confirmation Order").

5.       The Confirmation Order contains the same provision as Section 14.20 of the Plan

recited in paragraph 3, above.

6.       The Plan became effective on September 19, 2012 (the "Effective Date").

7.       Ms. Landrum was included on the confidential service list filed in the Bankruptcy

Case (the "Patient Service List"). *See* Order Granting Authority to File Separate Creditor Matrix

and Schedule F Containing Patient Information Under Seal; Case No. 11-11-13686 JA – Docket

No. 63; Paque Declaration, ¶ 5.

8.       Ms. Landrum's address on the Patient Service List was listed as P.O. Box 897, La

Luz, New Mexico 88337.   Paque Declaration, ¶ 5.

9.       Ms. Landrum used P.O. Box 897, La Luz, New Mexico as her address at all

relevant times.

-9-

10.    Ms. Landrum regularly received mail at P.O. Box 897, La Luz, New Mexico at all relevant times.

11.    The Court appointed KCC to serve as the claims, noticing, and balloting agent in the Bankruptcy Case.  *See* Interim Order Authorizing and Approving the Appointment of Kurtzman Carson Consultants, LLC as Noticing, Claims and Balloting Agent, entered August 22, 2011 in Case No. 11-11-13686 JA – Docket No. 64; Final Order Authorizing and Approving Appointment of Kurtzman Carson Consultants LLC as Noticing, Claims and Balloting Agent, entered September 12, 2011 in Case No. 11-11-13686 JA – Docket No. 123; Paque Declaration, ¶ 2.

12.    KCC mailed the following notices given in the Bankruptcy Case to Ms. Landrum on the following dates:

a. Notice of Commencement of Chapter 11 Bankruptcy Case ("Commencement Notice") (Docket No. 73), mailed by First Class mail on August 23, 2011.  *See* Affidavit of Service; Case No. 11-11-13686 JA – Docket No. 83;

b.  Notice to Patients Concerning (A) Hearing to Consider Plan Confirmation and (B) Deadline to file Objections to the Plan ("Patient Notice"), mailed by First Class mail on June 25, 2012.  *See* Amended Affidavit of Service and Exhibit E to Amended Affidavit of Service; Case No. 11-11-13686 JA – Docket No. 622;

c.  Notice of (A) Solicitation of Votes to Accept or Reject the Third Amended Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc. dated June 20, 2012 (B) Hearing to Consider Plan Confirmation and (C) Deadline for Filing Objections to the Plan ("Confirmation Notice"), mailed by First Class mail on June 23, 2012.  *See* Amended Affidavit of Service and Exhibit A to Amended Affidavit of Service; Case No. 11-11-13686 JA – Docket No. 622;

d.  Notice of (A) Entry of Order Confirming Third Amended Chapter11 Plan of Reorganization for Otero County Hospital Association, Inc.; (B) Occurrence of Effective Date; and (C) Bar Dates for Asserting Administrative Claims, Fee Claims and Rejections Claims ("Bar Date Notice") (Docket No. 770), mailed on September 21, 2012.  *See* Affidavit of Service, Case No. 11-11-13686 JA – Docket No. 788.

Paque Declaration, ¶¶ 6 and 7.

-10-

13.     The Confirmation Notice, which is just over two pages exclusive of the signature blocks, provided notice of the final confirmation hearing date scheduled for August 3, 2012, and included the following language in boldface type:

**[T]he plan contains injunctions which, with certain exceptions, permanently enjoin any holder of a claim against, among other things, taking any of the following actions against or affecting the Debtor, its Estate, its Assets, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (<u>including</u>, without limitation, all suits, actions, and proceedings that are pending as of the effective date of the Plan, which must be withdrawn or dismissed with prejudice); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of subrogation or recoupment of any kind. In addition, except as otherwise provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtor shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of claims shall be precluded from asserting against the Debtor, its Assets, or any property dealt with under the Plan, any further claim or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.**

14.     The Bar Date Notice set a bar date of October 29, 2012 for asserting administrative claims against the Hospital (the "Administrative Claims Bar Date").

15.     The Bar Date Notice included notice of the following:

a) that the Plan and the Confirmation Order "are valid and binding upon the Debtor, the holders of all Claims, and all other Persons and parties in interest, and their respective successors and assigns, and enforceable notwithstanding any otherwise applicable non-bankruptcy law."

b) that the "**[f]ailure to file notice of an Administrative Claim timely and properly shall result in such Administrative Claim being forever barred and discharged.**"

c) that "the Confirmation Order and the Plan contain other provisions that may affect your rights[,]"

-11-

d) that a copy of the Plan and/or Confirmation Order is available "at
http://www.nmb.uscourts.gov or http://www.kccllc.net/gcrmc, or upon request to:

> Kurtzman Carson Consultants, LLC
> 2335 Alaska Avenue
> El Segundo, CA 90245
> 888-647-1737
> GeraldChampionInfo@kccllc.com

16. The Bar Date Notice "encouraged [recipients of the Bar Date Notice] to review each of the Confirmation Order and the Plan in its entirety and consult with your own legal advisors should you have any questions in respect thereof."

17. Ms. Landrum denies having received any mail concerning the Bankruptcy Case, but she cannot recall any interruption in mail service to her P.O. Box from the Petition Date through the Administrative Claims Bar Date.

18. The Hospital published notice of the Plan confirmation hearing date, the Plan effective date and the Administrative Claims Bar Date in the Alamogordo Daily News, the Albuquerque Journal, and the El Paso Times newspapers. *See* Docket Nos. 651, 670, 671, 826, 825, and 824.

19. Dr. Moolamalla is a physician licensed to practice medicine in the State of New Mexico.

20. At all relevant times, Dr. Moolamalla was an employee of the Hospital.

21. Dr. Moolamalla provided medical services at GCRMC and at the Center for Women's Health and Specialty Services (hereafter, the "Center for Women's Health").[7]

---

[7] Ms. Landrum contests that the facility where she received treatment from Dr. Moolamalla is called the Center for Women's Health. In her deposition, she refers to the facility as the Women's Health Center. *See* Deposition of Cady Landrum ("Landrum Deposition") attached as Exhibit B to Plaintiff's Motion for Summary Judgment. Other documentation shows that Ms. Landrum went to the Center for Women's Health and Specialty Services. *See* Exhibit 4 attached to Supplemental Declaration of Andrew C. MacIntosh in Support of Defendants' Motion for Summary Judgment, attached to Defendant's Reply as Exhibit B (Docket No. 22-2). Whether the facility's actual name is the Women's Health Center, The Center for Women's Health, or The Center for Women's Health and Specialty Services is not material for purposes of this opinion.

22.     The Center for Women's Health is located on the campus of GCRMC.  *See*

Moolamalla Declaration; Landrum Deposition, p. 35, lines 3 – 13.[8]

23.     In the summer of 2011, Ms. Landrum made an appointment with Dr. Moolamalla

to discuss birth control options, and went to her appointment with Dr. Moolamalla at the Center

for Women's Health.

24.     Dr. Moolamalla provided medical treatment to Ms. Landrum in late August 2011

at the Center for Women's Health relating to the administration of a long-acting birth control

device (the "Medical Procedure").  The purpose of the Medical Procedure was to prevent Ms.

Landrum from becoming pregnant.

25.     Ms. Landrum learned she was pregnant in November 2011.

26.     Ms. Landrum was aware of the Bankruptcy Case by at least January of 2012.

27.     At the time Ms. Landrum sought treatment from Dr. Moolamalla, she believed he

was self-employed.

28.     Ms. Landrum filed the State Court Action against Dr. Moolamalla on October 14,

2014, asserting breach of contract and medical malpractice claims based on the Medical

Procedure.

29.     Dr. Moolamalla gave notice of the State Court Action to the Hospital.

30.     The Hospital's insurance carrier has assumed the defense of Ms. Landrum's

claims in the State Court Action.

---

[8] The Landrum Deposition states:
        Q. Okay.  And where is that?
        A.  It's in a building attached on the side of the hospital.
        Q. Of Gerald Champion Regional Medical Center?
        A. I think it's its own business. I don't know that question.
        Q. But the building is attached to Gerald Champion Regional Medical Center?
        A. It's not attached attached, but there's a hallway that leads – no, it's actually not attached.
Landrum Deposition, p. 35, lines 2 through 13.

31.     Ms. Landrum did not file a proof of claim in the Bankruptcy Case nor did she

assert an administrative claim in the Bankruptcy Case.

DISCUSSION

**A.  *The scope of the Plan's discharge injunction***

The Plan provides:

> On the Effective Date and except as otherwise provided in the Plan, all Persons
> who have been, are, or may be holders of Claims against the Debtor shall be
> permanently enjoined from taking any of the following actions against or
> affecting the Debtor, the Estate, the Assets or the Disbursing Agent, or any of
> their current or former respective members, directors, managers, officers,
> employees, agents, and professionals, successors and assigns or their respective
> assets and property with respect to such Claims (other than actions brought to
> enforce any rights or obligations under the Plan):
>
>> (i) commencing, conducting or continuing in any manner, directly or
>> indirectly, any suit, action or other proceeding of any kind (<u>including</u>, without
>> limitation, all suits, actions, and proceedings that are pending as of the
>> Effective Date, which must be withdrawn or dismissed with prejudice);
>>
>> (ii) enforcing, levying, attaching, collecting or otherwise recovering by any
>> manner or means, whether directly or indirectly, any judgement, award,
>> decree or order . . .

Plan, Section 14.20.

Ms. Landrum raises two main arguments in support of her position that this Plan

provision does not bar her claims:  1) she is not a creditor or claimant; and 2) this provision

impermissibly extends the injunction under 11 U.S.C. § 524 to non-debtor third parties.  The

Court will address each of these arguments in turn.

*Whether Ms. Landrum is a Creditor of the Hospital*

Ms. Landrum held and could have asserted an administrative claim against the Hospital

in the Bankruptcy Case based on the Medical Procedure.   It is an administrative claim because

the claim arose during the pendency of the Bankruptcy Case but prior to confirmation of the

Plan.  *See* 11 U.S.C. § 503(b)(1)(A) (allowance of administrative expenses); *Redmond v. NCMIC*

-14-

*Fin. Corp. (In re Brooke Corp.),* 485 B.R. 650, 659 (Bankr.D.Kan. 2013) ("the scope of §

503(b)(1)(A) . . . encompass[es] tort claims arising from postpetition conduct undertaken in the

operation of the estate's business.") (citing *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759,

20 L.Ed.2d 751 (1968)).  The claim was against the Hospital as well as Dr. Moolamalla because

Dr. Moolamalla performed the Medical Procedure while he was an employee of the Hospital in

the ordinary course of his employment.[9]  Ms. Landrum did not file an administrative or other

claim in the Bankruptcy Case.  Instead, she filed the State Court Action against Dr. Moolamalla

only, not also against the Hospital.

       Ms. Landrum asserts that the injunction contained in the Plan by its own terms does not

apply to her State Court Actions.  The Court disagrees.  In construing the injunction language,

the Court applies general rules of contract interpretation.[10]  When the language used is clear and

unambiguous, it is conclusive. *ConocoPhillips Co. v. Lyons,* 299 P.3d 844, 852, 2013-NMSC-

009, ¶ 23 (2012) (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704,

848 P.2d 66, 80 (1993) (quotation marks omitted)).   The words "'are to be given their ordinary

and usual meaning.'"  *Id.* (quoting *Rust Tractor Co. v. S. Union Gas Co.,* 85 N.M. 323, 324, 512

P.2d 83, 84 (1973)).

---

[9] *Cf. Reynolds v. Swigert,* 102 N.M. 504, 507-08, 697 P.2d 504, 507-08 (Ct.App. 1984) ("If a physician is in fact an employee of a hospital, under the doctrine of respondeat superior the hospital may be held liable for the tortious acts of the physician which are done in the scope of his employment.") (citing *Cooper v. Curry,* 92 N.M. 417, 419, 589 P.2d 201, 203 (Ct. App. 1978) (acknowledging that "courts have expanded the liability of hospitals for the torts of employees, including physician-employees, under the doctrine of Respondeat superior.") (citations omitted)).

[10] *See Santee v. J & R Marketing (In re Mako, Inc.),* 127 B.R. 474, 476 (Bankr.E.D.Okla. 1991) (stating that "a Chapter 11 Plan is a contract, subject to the same rules of interpretation as such written contracts.") (citation omitted); *Connolly v. City of Houston (In re Western Integrated Networks, LLC),* 322 B.R. 156, 160 (Bankr.D.Colo. 2005) (stating that "[a] chapter 11 plan is a contract between a debtor and the creditors of the bankruptcy estate . . . . [that] must be interpreted according to general rules for contractual interpretation.") (citations omitted); *Temex Energy, Inc. v. Hastie and Kirschner (In re Amarex, Inc.),* 96 B.R. 330, 332 (W.D.Okla. 1989) ("In interpreting the terms of a chapter 11 plan, the general rules of contractual interpretation are to be applied.") (citations omitted).

The injunction language in the Plan unambiguously states that the injunction extends to "all Persons who have been, are, or may be holders of Claims against the Debtor." Plan, Section 14.20. This broad language does not require a person to have filed a claim in the Bankruptcy Case, or even to hold an allowable claim against the Hospital. Because Ms. Landrum had a "claim" against the Hospital based on the Medical Procedure she received from the Hospital's employee that occurred after the petition, but before confirmation of the Plan, the injunction applies to that claim.

In addition, the injunction language in the Plan unambiguously applies to claims that could be asserted against both the Hospital and an employee of the Hospital. The plain language of Section 14.20 of the Plan permanently enjoins all persons who may have claims against the Hospital from asserting claims against its current or former employees related to such claims. *See* Plan, ¶ 14.20 ("all Persons . . . shall be permanently enjoined from taking any . . . actions against . . . any of their current or former . . . employees"). Regardless of whether she asserted her claim against the Hospital, Section 14.20 enjoins Ms. Landrum from asserting a claim against the Hospital's then employee, Dr. Moolamalla, based on the Medical Procedure.

Section 14.20 further enjoins all persons from commencing any action "affecting the Debtor," its assets, or the estate. *Id.* Because the Hospital's insurance carrier has assumed the defense of the claims against Dr. Moolamalla in the State Court Action, the State Court Action affects the Hospital. The Court infers based on the undisputed fact that the Hospital's insurance carrier is defending the claims in the State Court Action, that the State Court Action will have an effect on the Hospital's insurance premiums. Ms. Landrum argues that she did not cause the State Court Action to affect the Hospital, but rather, Dr. Moolamalla caused the State Court Action to affect the Debtor by providing notice of the State Court Action to the Hospital. That

-16-

argument is not persuasive.  The filing of the State Court Action triggered the events affecting the Hospital.

In sum, because the State Court Action against a former employee of the Hospital relates to a claim that arose prior to confirmation that Ms. Landrum could have asserted against the Hospital, and because such action affects the Hospital, it is enjoined by the unambiguous language of Section 14.20.

*Whether Section 14.20 impermissibly extends the discharge injunction to non-debtor third parties*

Ms. Landrum also contends that the language of Section 14.20 is contrary to the requirements of the Bankruptcy Code.  Under 11 U.S.C. § 524(e), the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).  This section "makes clear that the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-debtors of their liabilities."  *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000) (citations omitted).  In the Tenth Circuit, it may be impermissible for a debtor to obtain a non-debtor release of liability or permanent injunction of suits against non-debtor third parties through a confirmed Chapter 11 plan.  *See Landsing Diversified Properties-II v. First Nat'l Bank and Trust Co. of Tulsa (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 601-02 (10th Cir. 1990) (holding that, "while a temporary stay prohibiting a creditor's suit against a nondebtor . . . during the bankruptcy case may be permissible to facilitate the reorganization process . . . . the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor.") (citation omitted).[11]

_____

[11] *Western Real Estate* did not involve an injunction contained in a confirmed Chapter 11 plan.

However, a confirmed chapter 11 plan of reorganization is binding and entitled to *res judicata* effect. *See In re Laing,* 31 F.3d 1050, 1051 (10th Cir. 1994) (a confirmed Chapter 11 plan is binding as a final judgment on the merits); *In re K.D. Co., Inc.,* 254 B.R. 480, 490 (10th Cir. BAP 2000) (a confirmed plan and confirmation order "are binding on the parties under § 1141 and principles of *res judicata,* regardless of whether [the creditor] agreed with their provisions."). *See also* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . and any creditor. . . whether or not such creditor . . . accepted the plan."). Even if a plan contains provisions contrary to the requirements of the Bankruptcy Code, the provisions of a confirmed plan are binding and enforceable, provided all parties in interest had sufficient notice and an opportunity to object and the order confirming the plan is a final order not stayed pending appeal. *See United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (chapter 13 plan which discharged student loan debt without a finding of undue hardship as required under the Bankruptcy Code was nevertheless enforceable against creditor who had actual notice of the plan's contents); *K.D. Co.,* 254 B.R. at 489 (party in interest that did not object to the provisions in the confirmed plan at confirmation and did not timely appeal the confirmation order was "estopped from raising the legality of the provisions").

In *Espinosa,* the Supreme Court held that a party adversely affected by the terms of a confirmed Chapter 13 plan who received notice of the plan's contents but failed to object before the expiration of the time to appeal was not entitled to relief, even though the plan contained a provision contrary to the requirements of the Bankruptcy Code and Bankruptcy Rules. *See Espinosa,* 559 U.S. at 276 ("where . . . a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not

justify Rule 60(b)(4) relief.").  The Supreme Court further held that the Bankruptcy Court has an obligation to ensure that a confirmed plan complies with the requirements of the Bankruptcy Code, but that, even so, the offending provision did not render the confirmation order void.  *Id.* at 277 (finding that prior to confirmation of a plan the bankruptcy court has the authority to direct a debtor to conform the plan to the requirements of the Bankruptcy Code, but declining to declare the order void).

Thus, so long as Ms. Landrum received adequate notice to satisfy the requirements of due process, the inunction contained in Section 14.20 of the Plan is enforceable as it applies to claims against third parties regardless of whether the Plan would have been confirmed with that provision if a timely objection had been made.

### B. Due Process

The binding effect of a confirmed Chapter 11 plan is subject to the requirements of due process.  *See In re Unioil,* 948 F.2d 678, 683 (10th Cir. 1991) ("The confirmation of a Chapter 11 plan of reorganization cannot discharge the claim of a creditor who has not received constitutionally adequate formal notice of the proceeding or of the confirmation hearing.") (internal quotation marks and citation omitted); *Reliable Elec. Co., Inc. v. Olson Const. Co.,* 726 F.2d 620, 623 (10th Cir. 1984) (observing that "the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests" and holding that "notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution"); *In re Arch Wireless,* 332 B.R. 241, 251 (Bankr.D.Mass. 2005) ("The normal operation of the Bankruptcy Code . . . is predicated on the satisfaction of constitutional standards of due process.").  A

creditor will, therefore, not be bound by the terms of a confirmed plan if such creditor was not given adequate notice of the confirmation hearing, the terms of the plan, or the bar date for filing claims. *See American Bank and Trust Co. v. Jardine Ins. Services Texas, Inc. (In re Barton Industries, Inc.),* 104 F.3d 1241 (10th Cir. 1997) (creditor who did not receive sufficient notice of the proposed treatment of its claim to satisfy due process was not bound by the terms of the confirmed plan).[12]

Long standing Supreme Court precedent holds that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust, Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted). The constitutional requirements of due process are satisfied if the notice reasonably conveys the required information, provides reasonable time to the affected party to respond, and the method used to provide the notice is aimed at providing actual notice by means "reasonably certain to inform those affected." *Id.* at 315.

Ms. Landrum contends that she cannot be bound by the Plan because did not receive notice sufficient to satisfy her constitutional due process rights for two reasons. First, she argues that she did not receive any notice. Second, she urges that, in any event, the notice was inadequate. The Court will address each argument in turn.

_____

[12] *See also, Unioil,* 948 F.2d at 684 (claim of creditor who did not receive any formal notice of the deadline for filing proofs of claim, the time to object to confirmation, or the confirmation hearing was not discharged); *Arch Wireless,* 332 B.R. at 251 ("[I]f a creditor is not given adequate notice of the bar date for filing claims, the hearing on plan confirmation or the order confirming a plan in a Chapter 11 case, the creditor may not be bound by the plan provisions and its claim is not discharged.") (citations omitted); *OakFabco, Inc. v. American Standard, Inc. (In re Kewanee Boiler Corp.),* 297 B.R. 720, 730 (Bankr.N.D.Ill. 2003) ("A creditor's claim cannot be subjected to a confirmed plan that it had no opportunity to dispute.").

-20-

<u>Receipt of Notice</u>

The Hospital's transmission of notice to Ms. Landrum satisfies the requirements of due process. "[W]hen the name and address of an interested party is known, due process requires notice by mail or other means as certain to ensure actual notice." *In re Blinder, Robinson & Co., Inc.,* 124 F.3d 1238, 1243 (10th Cir. 1997) (internal quotation marks and citations omitted). The Hospital sent notice of the commencement of the Bankruptcy Case, notice of the hearing on confirmation, and notice of the bar date for filing administrative claims to Ms. Landrum at the Post Office box she regularly used during that time. KCC filed certificates of mailing in the Bankruptcy Case with respect to each of these notices.[13] Ms. Landrum nevertheless disputes having received any of these notices, "'[b]ut due process does not require that the interested party actually receive the notice.'" *Blinder,* 124 F.3d at 1243 (quoting *United States v. Clark,* 84 F.3d 378, 380 (10th Cir. 1996) (remaining citation omitted)). *See also United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir. 1994) (same).

Moreover, proof that a notice was properly addressed and mailed is entitled to the presumption of receipt. *See Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932) ("proof that a letter properly directed was placed in a post office crates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (citing *Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884)).[14] The presumption of receipt may be established through a certificate of mailing. *See*

---

[13] The Hospital also provided notice of the confirmation hearing and of the Administrative Claims Bar Date by publication. Notice by mail coupled with notice by publication may be sufficient to satisfy the requirements of due process. *See Blinder,* 124 F.3d at 1243 (finding that mailing notice combined with publishing notice in newspapers of general circulation were reasonably calculated to apprise interested parties and afford them an opportunity to be heard, and, therefore, satisfied due process).

[14] *See also, Witt v. Roadway Express,* 136 F.3d 1424, 1429-30 (10th Cir. 1998) ("A rebuttable presumption of receipt does arise on evidence that a properly addressed piece of mail is placed in the care of the postal service.") (citation omitted). *See also Nikwei v. Ross School of Aviation, Inc.,* 822 F.2d 939, 941 (10th Cir. 1987) ("A proper mailing of the summons and complaint raises a rebuttable presumption of due delivery to the addressee.") (citation omitted).

*Denmon v. Runyon,* 208 B.R. 225 (D.Kan. 1997) (presumption of receipt of bankruptcy filing arose from certificate of mailing from the bankruptcy court); *American Properties,* 30 B.R. at 238 (certificate of service of the mailing in the Court file demonstrated proof of mailing and presumed receipt). The mere denial of receipt by the addressee generally is insufficient to rebut the presumption of receipt. *See Denmon,* 208 B.R. at 227-28 ("an allegation of denial of receipt does not, by itself, rebut the presumption of proper notice") (citations omitted); *In re Loomas,* 2013 WL 5615943 at *4 n. 38 (10th Cir. BAP Oct. 15, 2013) ("mere denial of receipt alone does not rebut the presumption that the mailed item was received.") (citing *Bosiger v. U.S. Airways,* 510 F.3d 442, 452 (4th Cir. 2007)). Especially in bankruptcy cases, "[i]f a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." *Osborn v. Ricketts (In re Ricketts),* 80 B.R. 495, 497 (9th Cir. BAP 1987).

Ms. Landrum has not offered sufficient evidence to rebut the presumption of receipt of the notices sent to her in connection with the Bankruptcy Case. Other than her deposition testimony denying receipt, she has offered no other evidence that would indicate the notices properly addressed to her at the Post Office box she regularly used during that time did not reach their intended destination. To the contrary, she could not recall any interruption in service at her Post Office box during the relevant time period. The Court therefore concludes that notice of the Bankruptcy Case, the confirmation hearing, and the Administrative Claims Bar Date satisfies the due process requirement to provide notice by a method reasonably calculated to give actual notice to the affected parties.

The final element necessary to satisfy due process is whether the content of the notice reasonably conveyed the required information. *See Mullane,* 339 U.S. at 314 ("The notice must be of such nature as reasonably to convey the required information.") (citation omitted). This due process requirement applies equally to bankruptcy cases. *Barton Indus.,* 104 F.3d at 1246 (citations omitted). "[A] creditor's claim is not subject to a confirmed bankruptcy plan when the creditor is denied due process because of inadequate notice." *Id*. at 1245 (citing *Reliable Elec.,* 726 F.2d at 622-23).

The Confirmation Notice included the Plan Injunction language in bold type. The Bar Date Notice and Confirmation Notice together gave Ms. Landrum notice that apprised her that failure to assert her administrative claim in the Bankruptcy Case would bar her from asserting her claim based on the Medical Procedure against the Hospital and its employees. Whether the content of these notices adequately conveyed the required information to render the Plan Injunction enforceable consistent with the due process clause turns on whether Ms. Landrum knew or had reason to investigate the relationship between the Hospital and Dr. Moolamalla.

As a potential creditor, Ms. Landrum had a "responsibility to diligently investigate what claims [she] may have against the debtor." *DPWN Holdings (USA), Inc., v. United Air Lines, Inc.,* 871 F.Supp.2d 143, 158 (E.D.N.Y. 2012). *Cf. Barton Indus.,* 104 F.3d at 1246 (acknowledging that "creditors have a responsibility to take an active role in protecting their claims.") (citation omitted). However, if she was not on inquiry notice that Dr. Moolamalla might be an employee of or otherwise associated with the Hospital, she would have no reason to investigate whether the Plan could affect her claim against him.[15]

---

[15] This case is distinguishable from a case in which a debtor gave the best notice based on facts known or knowable to it, but it still failed to put a creditor on inquiry notice.

Ms. Landrum was treated at the Center for Women's Health. The facts established by the motions for summary judgement do not address the relationship between the Hospital and the Center for Women's Health. For example, if the Center of Women's Health is a division of the Hospital, the Center of Women's Health may very well be a name under which the Hospital did business. Neither the Voluntary Petition commencing the Bankruptcy Case, the Amended Voluntary Petition nor the Commencement Notice filed by the Hospital in the Bankruptcy Case list the Center for Woman's Health as a name the Debtor has used or under which it operated business in the last eight years. *See* Docket Nos. 1, 30 and 73. Those documents reflect that the Debtor has done business within that period only under the names Gerald Champion Regional Medical Center and Mountain View Catering. *Id*. The Hospital served the Commencement Notice on Ms. Landrum. *See* Docket No. 83. Further, neither the Bar Date Notice, the Confirmation Notice giving notice of the proposed Plan Injunction nor any other notice given to Ms. Landrum relating to the Bankruptcy Case gave notice of any connection between the Hospital and the Center for Women's Health. Instead, the case caption used in each of the notices the Hospital gave Ms. Landrum in the Bankruptcy Case named the Debtor as "Otero County Hospital Association, Inc. (d/b/a Gerald Champion Regional Medical Center, d/b/a Mountain View Catering)."

If the Hospital did business under the Center for Woman's Health name, it easily could have included that fact in a notice to Ms. Landrum, which would have triggered her duty to investigate whether her claim against Dr. Moolamalla would be subject to the Plan Injunction. The notices the Hospital gave, however, indicated otherwise or were silent.

The only evidence before the Court that Ms. Landrum was on inquiry notice of a possible connection between the Hospital and Dr. Moolamalla is that the Center for Woman's Health is

-24-

housed in a separate building on the Hospital campus connected to the main Hospital building by a hallway. However, the Court cannot adequately assess the import of this evidence without visually picturing how this might have led a reasonable person to conclude there might be an operational association between the Hospital and the Center for Women's Health so as to put Ms. Landrum on inquiry notice that Dr. Moolamalla might be associated with the Hospital. If the Center for Women's Health was part of the Hospital, other relevant evidence might include whether any connection between the Hospital and the Center for Woman's Health could be ascertained from billing statements, medical bills, disclosures, signage, name tags or similar items Ms. Landrum would have seen. If the notice provided to creditors, or other relevant information Ms. Landrum should have learned through inquiry, does not provide adequate information that a claim against Dr. Moolamalla might be affected by the Plan, such claims will not be affected by the confirmed plan. *Cf. Barton Indus.,* 104 F.3d at 1246 (finding that an obscure reference to a creditor's interest in an agreement incorporated into the plan did not provide adequate notice). But the "lack of particularity in the notice will not defeat discharge if the claims were ascertainable to the claimant through reasonable efforts." *DPWN Holdings,* 871 F.Supp.2d at 158.

The facts now before the Court are insufficient to determine on summary judgment whether the notices the Hospital gave Ms. Landrum in the Bankruptcy Case coupled with whatever knowledge and inquiry notice she had were sufficient to bind Ms. Landrum to the Plan Injunction consistent with the requirements of due process.

CONCLUSION

Based on the foregoing, the Court will enter partial summary judgment in favor of Defendants determining that the Plan Injunction is broad enough to bar Ms. Landrum's claims,

and that Ms. Landrum actually received the Commencement Notice, Patient Notice, Confirmation Notice, and Bar Date Notice. Fact issues prevent the Court from determining on summary judgment whether the content of the notices to Ms. Landrum satisfies the requirements of due process sufficient to bind her to the injunction contained in the confirmed Chapter 11 Plan as it relates to her claim against Dr. Moolamalla.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 23, 2016

COPY TO:

Miguel O Garcia
John R. Hakanson, P.C.
Attorney for Plaintiff
307 East 11th Street
Alamogordo, NM 88310

Craig H. Averch
Roberto Kampfner
Andrew Macintosh
White & Case, LLP
Attorney for Defendants
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433

-26-