## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW MEXICO

In re:  OTERO COUNTY HOSPITAL ASSOCIATION,        Case No. 11-11-13686 JA
        INC., (d/b/a Gerald Champion Regional Medical
        Center, d/b/a Mountain View Catering),

        Debtor.

CADY LANDRUM,

        Plaintiff,

v.                                                Adversary No. 15-1016 J

OTERO COUNTY HOSPITAL ASSOCIATION,
INC., (d/b/a Gerald Champion Regional Medical
Center, d/b/a Mountain View Catering), and
SURGIT MOOLAMALLA,

        Defendants.


OTERO COUNTY HOSPITAL ASSOCIATION,
INC., (d/b/a Gerald Champion Regional Medical
Center, d/b/a Mountain View Catering),

        Counterplaintiff,

v.

CADY LANDRUM,

        Counterdefendant.

### <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court for a trial on the merits. [1]  Plaintiff Cady Landrum

(referred to hereinafter as "Plaintiff" or Ms. Landrum) filed a complaint in state court against Dr.

---

[1] *See* Plaintiff's Motion for Summary Judgment (Docket No. 14); Defendants' Motion for Summary Judgment (Partial) ("Defendants' Summary Judgment Motion") (Docket No. 16); Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 18); Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 17); Plaintiff's Reply in Further Support of her Motion for Summary Judgment (Docket No. 19); Defendants' Reply in Support of Motion for Summary Judgment (Partial) (Docket No. 22); Plaintiff's Sur-Reply to Defendants' Motion for Summary Judgment (Docket No. 23).

Surgit Moolamalla in the Twelfth Judicial District Court, Otero County, State of New Mexico as Case No. D-1215-CV-2014-0605 (the "State Court Action"). In this adversary proceeding, she seeks a declaratory judgment determining, (i) 11 U.S.C. § 362(a) does not enjoin the State Court Action; (ii)§ 524(a) does not enjoin the State Court Action; (iii) the plan (the "Plan") confirmed in the Chapter 11 bankruptcy case ("Bankruptcy Case") filed by Defendant Otero County Hospital Association, Inc., (d/b/a Gerald Champion Regional Medical Center, d/b/a Mountain View Catering) (the "Hospital") does not enjoin the State Court Action; (iv) she has not waived her claim against Dr. Moolamalla by not filing an administrative claim in the Bankruptcy Case; and (v) she did not willfully violate § 362(a).[2] Defendants oppose Plaintiff's request for declaratory judgment with respect to items iii and iv of the list above, but do not oppose Plaintiff's request with respect to items i, ii, and v. Defendants counterclaimed seeking a declaratory judgment that the Plan and § 1141(d) enjoin the State Court Action and further request that the Court hold Plaintiff in contempt of court and award Defendants damages.[3]

Prior to the trial, the Court entered its Order Granting, in Part, and Denying, in Part, Defendants' Motion for Summary Judgment (Partial) (Docket No. 25) (the "Summary Judgment Order"). In the Summary Judgment Order, the Court held: (i) the language of Section 14.20 of the Plan (the "Plan Injunction") is broad enough to bar Plaintiff's claims against Dr. Moolamalla asserted in the State Court Action if Dr. Moolamalla was an employee of the Debtor when he performed the medical procedure on Plaintiff; and (ii) Plaintiff received actual notice of the commencement of the Bankruptcy Case, the hearing on confirmation of the Plan (which included

---

[2] *See* Pre-Trial Order (Docket No. 31), pp. 4-5.

[3] In the Pre-Trial Order (Docket No. 31), Defendants also sought "damages based on Plaintiff's breach of contract (the contract being the Plan)." At trial, Defendants conceded that there is no basis under the Plan to award Defendants damages based on Plaintiff prosecuting the State Court Action.

-2-

notice of the Plan Injunction), confirmation of the Plan, and the bar date for filing administrative claims in the Bankruptcy Case. The remaining issue for trial is whether the content of the notices Plaintiff received satisfied the requirements of due process. For the reasons explained below, the Court holds that the notices Plaintiff received satisfied the requirements of due process.

## Findings of Fact[4]

### A. The Plan and the Plan Injunction.

The Hospital operates the Gerald Champion Regional Medical Center ("GCRMC") in Alamogordo, New Mexico. *See* Pre-Trial Order, p. 7. The Hospital commenced the Bankruptcy Case on August 16, 2011 (the "Petition Date") by filing a voluntary petition under Chapter 11 of notthe Bankruptcy Code. The Hospital filed the Plain on June 20, 2012. The Plan included the Plan Injunction, which provides as follows:

> On the Effective Date and except as otherwise provided in the Plan, all Persons who have been, are, or may be holders of Claims against the Debtor shall be permanently enjoined from taking any of the following actions against or affecting the Debtor, the Estate, the Assets or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):
>
> > (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);
> >
> > (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgement, award, decree or order . . . .

---

[4] Many of the Court's findings of fact were established by consent of the parties in the Pre-Trial Order (Docket No. 31).

*Id.* The Court entered the Order Confirming Chapter 11 Plan (Bankruptcy Case Docket No. 712) (the "Confirmation Order") confirming the Plan on August 7, 2012. The Confirmation Order contains language that is effectively the same as the Plan Injunction. *See id.* The Plan became effective September 19, 2012 (the "Effective Date"). *See id.*

### B.      *Notice of the Plan and Plan Injunction.*

Plaintiff had actual notice of the Bankruptcy Case no later than January 2012. Plaintiff was included on the confidential service list filed in the Chapter 11 Case (the "Patient Service List"). *See id.* Plaintiff's address on the Patient Service List was listed as P.O. Box 897, La Luz, New Mexico 88337. *See id.* Plaintiff that used and regularly received mail at that P.O. Box. *See id.* The Court appointed Kurtzman Carson Consultants LLC ("KCC") to serve as the claims, noticing, and balloting agent in the Chapter 11 Case. *See id.* at p. 8. KCC mailed the following notices given in the Chapter 11 Case to Plaintiff:

> (i) Notice of Commencement of Chapter 11 Bankruptcy Case [Bankr. D.I. 73], mailed by First Class mail on August 23, 2011. See Affidavit of Service (Bankruptcy Case No. 11-13686-j11, Docket No. 83);

> (ii) Notice to Patients Concerning (a) Hearing to Consider Plan Confirmation and (b) Deadline to file Objections to the Plan, mailed by First Class mail on June 25, 2012. See Amended Affidavit of Service and Exhibit E to Amended Affidavit of Service (Bankruptcy Case No. 11-13686-j11, Docket No. 622);

> (iii) Notice of (a) Solicitation of Votes to Accept or Reject the Third Amended Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc. dated June 20, 2012 (b) Hearing to Consider Plan Confirmation and (c) Deadline for Filing Objections to the Plan (the "Confirmation Notice"), mailed by First Class mail on June 23, 2012. See Amended Affidavit of Service and Exhibit A to Amended Affidavit of Service (Bankruptcy Case No. 11-13686-j11, Docket No. 622); and

> (iv) Notice of (a) Entry of Order Confirming Third Amended Chapter 11 Plan of Reorganization for Otero County Hospital Association, Inc.; (b) Occurrence of Effective Date; and (c) Bar Dates for Asserting Administrative Claims, Fee Claims and Rejections Claims ("Bar Date Notice") (Bankruptcy Case No. 11-

-4-

13686-j11, Docket No. 770), mailed on September 21, 2012. See Affidavit of Service (Bankruptcy Case No. 11-13686-j11, Docket No. 788).

*Id.*

The Confirmation Notice, which is just over two pages exclusive of the signature blocks, provided notice of the final confirmation hearing date scheduled for August 3, 2012, and included the following language in boldface type:

> [T]he plan contains injunctions which, with certain exceptions, permanently enjoin any holder of a claim against, among other things, taking any of the following actions against or affecting the Debtor, its Estate, its Assets, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the effective date of the Plan, which must be withdrawn or dismissed with prejudice); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of subrogation or recoupment of any kind. In addition, except as otherwise provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtor shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of claims shall be precluded from asserting against the Debtor, its Assets, or any property dealt with under the Plan, any further claim or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.

*Id*. at pp. 8-9.

The Bar Date Notice set a bar date of October 29, 2012 for asserting administrative claims against OCHA (the "Administrative Claims Bar Date"). The Bar Date Notice included notice of the following:

> (i) that the Plan and the Confirmation Order "are valid and binding upon the Debtor, the holders of all Claims, and all other Persons and parties in interest, and their

respective successors and assigns, and enforceable notwithstanding any otherwise applicable non-bankruptcy law."

(ii) that the "[f]ailure to file notice of an Administrative Claim timely and properly shall result in such Administrative Claim being forever barred and discharged."

(iii) that "the Confirmation Order and the Plan contain other provisions that may affect your rights[,]"

(iv) that a copy of the Plan and/or Confirmation Order is available "at http://www.nmb.uscourts.gov or http://www.kccllc.net/gcrmc, or upon request to:

> Kurtzman Carson Consultants, LLC
> 2335 Alaska Avenue
> El Segundo, CA 90245
> 888-647-1737
> GeraldChampionInfo@kccllc.com

*Id*. at p. 9. The Bar Date Notice "encouraged [recipients of the Bar Date Notice] to review each of the Confirmation Order and the Plan in its entirety and consult with your own legal advisors should you have any questions in respect thereof." *Id.* Plaintiff denies having received any mail concerning the Chapter 11 Case, but she cannot recall any interruption in mail service to her P.O. Box from the Petition Date through the Administrative Claims Bar Date. *See id.* OCHA published notice of the Plan confirmation hearing date, the Plan effective date and the Administrative Claims Bar Date in the Alamogordo Daily News, the Albuquerque Journal, and the El Paso Times newspapers. *See id.* Plaintiff did not file a proof of claim in the Chapter 11 Case nor did she assert an administrative claim in the Chapter 11 Case. *See id.* at p. 10.

### C. Dr. Moolamalla.

Dr. Moolamalla is a physician licensed to practice medicine in the State of New Mexico. Dr. Moolamalla provided medical services at GCRMC including at the Center for Women's Health and Specialty Services (the "Center"). *See* Pre-Trial Order, p. 10. In the summer of 2011, Plaintiff made an appointment through the Center to discuss birth control options with Dr. Moolamalla.

*See id.* Plaintiff went to her appointment with Dr. Moolamalla at the Center. Plaintiff decided to obtain a birth control implant, which is supposed to prevent Plaintiff from becoming pregnant for a specified period of time. *See id.* In late August 2011, Plaintiff visited Dr. Moolamalla at the Center at which time he performed a medical procedure through which he was supposed to insert the birth control implant into Plaintiff (the "Medical Procedure"). *See id.*

### D. The relationship between the Center and GCRMC.

The Center is a service line provided by GCRMC that provides female patients with medial services related to reproductive health. The Center has no independent legal status and does not function autonomously. The Center is managed and administered entirely within GCRMC's corporate structure. All accounting for the Center is performed by GCRMC's accounting department. All billing for the Center is performed by GCRMC's billing department. All staffing and personnel decisions for the Center are made by GCRMC's human resources department. The Center is located on the GCRMC campus immediately adjacent to the GCRMC main building.

### E. Notice to Ms. Landrum of the Relationship between Dr. Moolamalla and the Hospital.

Ms. Landrum believed all doctors performing medical procedures at a hospital are self-employed. She formed this belief after her brother, who received a medical procedure in a Georgia hospital, was billed separately by the hospital and the doctor.

Ms. Landrum visited the Center numerous times prior to receiving the Medical Procedure. Ms. Landrum gave birth to a child in 2009 and received all prenatal care during that pregnancy at the Center. In addition, Ms. Landrum received all prenatal care during the pregnancy that immediately followed the Medical Procedure at the Center, during which time she visited the Center numerous times. Ms. Landrum visited the Center to meet with Dr. Moolamalla three to

-7-

four times in connection with the Medical Procedure itself. Each time Ms. Landrum visited the Center she drove through an GCRMC campus entrance that was marked by a large marquee with the heading "Gerald Champion Regional Medical Center." As she made her way to the Center, she passed a sign titled "Medical Office Building" (the "MOB") containing a list of several specialty medical practices housed in the MOB, including the Center. The MOB is separate from the main GCRMC building, but is connected by a breezeway to the main GCRMC building. Upon entering the Center, Ms. Landrum was greeted by a receptionist clearly displaying a GCRMC badge. All Hospital staff, including doctors and other staff working at the Center, were required to wear a GCRMC badge at all times and in a clearly visible location. The label "Gerald Champion Regional Medical Center" was in large print and clearly legible on all badges issued to Hospital staff. Non-compliance with the GCRMC's badge policy was rare. Hospital staff needed their nametags to gain access to secure areas of the GCRMC campus, to clock in and out of work, and obtain food in the cafeteria. Supervisors strictly enforced compliance with GCRMC's badge policy. The Hospital issued Dr. Moolamalla a badge bearing a photograph of him, his name, "Gerald Champion Regional Medical Center," and "Medical Staff." Dr. Moolamalla, like all Hospital staff, was subject to the GCRMC badge policy. Dr. Moolamalla almost always complied with the GCRMC badge policy. Dr. Moolamalla wore his GCRMC badge one or more of the times he interacted with Plaintiff. During one of Plaintiff's visits with Dr. Moolamalla, he wore the white coat GCRMC issued to him. Dr. Moolamalla's white coat had his name and "Gerald Champion Regional Medical Center" embroidered in a large clearly legible font above the breast pocket.

Based on the foregoing, any reasonable person in Ms. Landrum's situation would have been aware that there is a strong possibility that Dr. Moolamalla was an employee of GCRMC. In

fact, Ms. Landrum's attorney sent a letter on August 24, 2012 to "Center for Women's Health, Gerald Champion Regional Medical Center" requesting Ms. Landrum's medical records. *See* Exhibit P. That letter included a medical release form signed by Ms. Landrum. The medical release form authorized the following organization to release medical records: "Center for Women's Health, Gerald Champion Regional Medical Center, 2559 Medical Drive Suite D, Alamogordo, NM 88310." At the time Ms. Landrum sought treatment from Dr. Moolamalla, she believed he was self-employed.

### F. The State Court Action.

In November 2011, Plaintiff learned she was pregnant. Plaintiff filed the State Court Action against Dr. Moolamalla asserting a claim for medical malpractice arising from the failure of the Medical Procedure to prevent Ms. Landrum from becoming pregnant. Dr. Moolamalla gave notice of the State Court Action to the Hospital. The Hospital's insurance carrier has assumed the defense of Ms. Landrum's claims in the State Court Action. On February 9, 2015, counsel for the Hospital sent a letter to Ms. Landrum's attorney informing him that the Hospital believed Ms. Landrum's claim was barred by the Plan Injunction. *See* Exhibit AA. Upon receipt of the letter, Ms. Landrum agreed to stay all proceedings in the State Court Action pending a ruling from the bankruptcy court on the binding effect of the Plan Injunction. A week later, Ms. Landrum filed this action.

### Discussion

### A. Ms. Landrum is a Creditor of the Hospital

Ms. Landrum held a claim for medical malpractice against the Hospital and Dr. Moolamalla arising from the Medical Procedure and Plaintiff's subsequent pregnancy. Ms. Landrum held and could have asserted an administrative claim against the Hospital in the

-9-

Bankruptcy Case arising from the Medical Procedure. Ms. Landrum's claim was an administrative claim because it arose during the pendency of the Bankruptcy Case but prior to confirmation of the Plan. *See* 11 U.S.C. § 503(b)(1)(A) (allowance of administrative expenses); *Redmond v. NCMIC Fin. Corp. (In re Brooke Corp.),* 485 B.R. 650, 659 (Bankr. D. Kan. 2013) ("the scope of § 503(b)(1)(A) . . . encompass[es] tort claims arising from postpetition conduct undertaken in the operation of the estate's business.") (citing *Reading Co. v. Brown,* 391 U.S. 471, 88 S. Ct. 1759, 20 L.Ed.2d 751 (1968)). Ms. Landrum's claim was against the Hospital as well as Dr. Moolamalla because Dr. Moolamalla performed the Medical Procedure while he was an employee of the Hospital and in the ordinary course of his employment.[5] Ms. Landrum did not file an administrative or other claim in the Bankruptcy Case. Instead, she filed the State Court Action against Dr. Moolamalla only, not against the Hospital.

Ms. Landrum asserts that the injunction contained in the Plan by its own terms does not apply to her State Court Action. The Court disagrees. In construing the injunction language, the Court applies general rules of contract interpretation.[6] When the language used is clear and unambiguous, it is conclusive. *ConocoPhillips Co. v. Lyons,* 299 P.3d 844, 852, 2013-NMSC-009, ¶ 23 (2012) (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 115 N.M. 690, 704, 848 P.2d 66, 80 (1993) (quotation marks omitted)). Words "'are to be given their ordinary and usual

---

[5] *Cf. Reynolds v. Swigert,* 102 N.M. 504, 507-08, 697 P.2d 504, 507-08 (Ct. App. 1984) ("If a physician is in fact an employee of a hospital, under the doctrine of respondeat superior the hospital may be held liable for the tortious acts of the physician which are done in the scope of his employment.") (citing *Cooper v. Curry,* 92 N.M. 417, 419, 589 P.2d 201, 203 (Ct. App. 1978) (acknowledging that "courts have expanded the liability of hospitals for the torts of employees, including physician-employees, under the doctrine of Respondeat superior.") (citations omitted)).

[6] *See Santee v. J & R Marketing (In re Mako, Inc.),* 127 B.R. 474, 476 (Bankr. E.D. Okla. 1991) (stating that "a Chapter 11 Plan is a contract, subject to the same rules of interpretation as such written contracts.") (citation omitted); *Connolly v. City of Houston (In re Western Integrated Networks, LLC),* 322 B.R. 156, 160 (Bankr. D. Colo. 2005) (stating that "[a] chapter 11 plan is a contract between a debtor and the creditors of the bankruptcy estate . . . . [that] must be interpreted according to general rules for contractual interpretation.") (citations omitted); *Temex Energy, Inc. v. Hastie and Kirschner (In re Amarex, Inc.),* 96 B.R. 330, 332 (W.D. Okla. 1989) ("In interpreting the terms of a chapter 11 plan, the general rules of contractual interpretation are to be applied.") (citations omitted).

meaning.'" *Id.* (quoting *Rust Tractor Co. v. S. Union Gas Co.,* 85 N.M. 323, 324, 512 P.2d 83, 84 (1973)).

The injunction language in the Plan unambiguously states that the injunction extends to "all Persons who have been, are, or may be holders of Claims against the Debtor." Plan, Section 14.20. This broad language does not require a person to have filed a claim in the Bankruptcy Case, or even to hold an allowable claim against the Hospital. Because Ms. Landrum had a "claim" against the Hospital based on the Medical Procedure she received from the Hospital's employee that occurred after the petition, but before confirmation of the Plan, the injunction applies to that claim.

The injunction language in the Plan unambiguously applies to claims that could be asserted against not only the Hospital, but also an employee of the Hospital. The plain language of Section 14.20 of the Plan permanently enjoins all persons who may have claims against the Hospital from asserting claims against its current or former employees related to such claims. *See* Plan, ¶ 14.20 ("all Persons . . . shall be permanently enjoined from taking any . . . actions against . . . any of their current or former . . . employees"). Regardless of whether she asserted her claim against the Hospital, Section 14.20 enjoins Ms. Landrum from asserting a claim against the Hospital's then employee, Dr. Moolamalla, based on the Medical Procedure.

Section 14.20 further enjoins all persons from commencing any action "affecting the Debtor," its assets, or the estate. *Id.* Because the Hospital's insurance carrier has assumed the defense of the claims against Dr. Moolamalla in the State Court Action, the State Court Action affects the Hospital. The Court infers based on the undisputed fact that the Hospital's insurance carrier is defending the claims in the State Court Action, that the State Court Action will have an effect on the Hospital's insurance premiums. Ms. Landrum argues that she did not cause the State

-11-

Court Action to affect the Hospital, but rather, Dr. Moolamalla caused the State Court Action to affect the Debtor by providing notice of the State Court Action to the Hospital. That argument is not persuasive. The filing of the State Court Action triggered the events affecting the Hospital.

In sum, because the State Court Action against a former employee of the Hospital relates to a claim that arose prior to confirmation that Ms. Landrum could have asserted against the Hospital, and because such action affects the Hospital, it is enjoined by the unambiguous language of Section 14.20.

> **B.** **The Confirmation Order is res judicata on the permissibility of Section 14.20's extension of the discharge injunction to non-debtor third parties.**

Ms. Landrum also contends that the language of Section 14.20 is contrary to the requirements of the Bankruptcy Code. Under 11 U.S.C. § 524(e), the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). This section "makes clear that the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-debtors of their liabilities." *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000) (citations omitted). In the Tenth Circuit, it may be impermissible for a debtor to obtain a non-debtor release of liability or permanent injunction of suits against non-debtor third parties through a confirmed Chapter 11 plan. *See Landsing Diversified Properties-II v. First Nat'l Bank and Trust Co. of Tulsa (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 601-02 (10th Cir. 1990) (holding that, "while a temporary stay prohibiting a creditor's suit against a nondebtor . . . during the bankruptcy case may be permissible to facilitate the reorganization process . . . . the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its

-12-

own liability to the creditor.") (citation omitted).[7]  However, a confirmed chapter 11 plan of

reorganization is binding and entitled to *res judicata* effect.  *See In re Laing,* 31 F.3d 1050, 1051

(10th Cir. 1994) (a confirmed Chapter 11 plan is binding as a final judgment on the merits); *In re*

*K.D. Co., Inc.,* 254 B.R. 480, 490 (10th Cir. BAP 2000) (a confirmed plan and confirmation order

"are binding on the parties under § 1141 and principles of *res judicata,* regardless of whether [the

creditor] agreed with their provisions.").  *See also* 11 U.S.C.  § 1141(a) ("the provisions of a

confirmed plan bind the debtor . . . and any creditor. . . whether or not such creditor . . . accepted

the plan.").  Even if a plan contains provisions contrary to the requirements of the Bankruptcy

Code, the provisions of a confirmed plan are binding and enforceable, provided all parties in

interest had sufficient notice and an opportunity to object and the order confirming the plan is a

final order not stayed pending appeal. *See United Student Aid Funds, Inc. v. Espinosa,* 559 U.S.

260, 130 S. Ct. 1367, 176 L.Ed.2d 158 (2010) (chapter 13 plan which discharged student loan debt

without a finding of undue hardship as required under the Bankruptcy Code was nevertheless

enforceable against creditor who had actual notice of the plan's contents); *K.D. Co.,* 254 B.R. at

489 (party in interest that did not object to the provisions in the confirmed plan at confirmation

and did not timely appeal the confirmation order was "estopped from raising the legality of the

provisions").

　　　　In *Espinosa,* the Supreme Court held that a party adversely affected by the terms of a

confirmed Chapter 13 plan who received notice of the plan's contents but failed to object before

the expiration of the time to appeal was not entitled to relief, even though the plan contained a

provision contrary to the requirements of the Bankruptcy Code and Bankruptcy Rules.  *See*

*Espinosa,* 559 U.S. at 276 ("where . . . a party is notified of a plan's contents and fails to object to

---

[7] *Western Real Estate* did not involve an injunction contained in a confirmed Chapter 11 plan.

confirmation of the plan before the time for appeal expires, that party has been afforded a full and

fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify

Rule 60(b)(4) relief."). The Supreme Court further held that the bankruptcy court has an obligation

to ensure that a confirmed plan complies with the requirements of the Bankruptcy Code, but that,

even so, the offending provision did not render the confirmation order void. *Id.* at 277 (finding

that prior to confirmation of a plan the bankruptcy court has the authority to direct a debtor to

conform the plan to the requirements of the Bankruptcy Code, but declining to declare the order

void).

Thus, so long as Ms. Landrum received adequate notice, the inunction contained in Section

14.20 of the Plan is enforceable as it applies to claims against third parties regardless of whether

the Plan would have been confirmed with that provision if a timely objection had been made.

### C.      *Due Process.*

The binding effect of a confirmed Chapter 11 plan is subject to the requirements of due

process. *See In re Unioil,* 948 F.2d 678, 683 (10th Cir. 1991) ("The confirmation of a Chapter 11

plan of reorganization cannot discharge the claim of a creditor who has not received

constitutionally adequate formal notice of the proceeding or of the confirmation hearing.")

(internal quotation marks and citation omitted); *Reliable Elec. Co., Inc. v. Olson Const. Co.,* 726

F.2d 620, 623 (10th Cir. 1984) (observing that "the reorganization process depends upon all

creditors and interested parties being properly notified of all vital steps in the proceeding so they

may have the opportunity to protect their interests" and holding that "notwithstanding the language

of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is

violative of the fifth amendment to the United States Constitution"); *In re Arch Wireless,* 332 B.R.

241, 251 (Bankr. D. Mass. 2005) ("The normal operation of the Bankruptcy Code . . . is predicated

-14-

on the satisfaction of constitutional standards of due process."). A creditor will, therefore, not be bound by the terms of a confirmed plan if such creditor was not given adequate notice of the confirmation hearing, the terms of the plan, or the bar date for filing claims. *See American Bank and Trust Co. v. Jardine Ins. Services Texas, Inc. (In re Barton Industries, Inc.),* 104 F.3d 1241 (10th Cir. 1997) (creditor who did not receive sufficient notice of the proposed treatment of its claim to satisfy due process was not bound by the terms of the confirmed plan).[8]

Long standing Supreme Court precedent holds that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust, Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citations omitted). The constitutional requirements of due process are satisfied if the notice reasonably conveys the required information, provides reasonable time to the affected party to respond, and the method used to provide the notice is aimed at providing actual notice by means "reasonably certain to inform those affected." *Id.* at 315.

Ms. Landrum contends that she cannot be bound by the Plan because did not receive notice sufficient to satisfy her constitutional due process rights for two reasons. First, she argues that she did not receive any notice. Second, she urges that, in any event, the notice was inadequate. The Court will address each argument in turn.

---

[8] *See also, Unioil,* 948 F.2d at 684 (claim of creditor who did not receive any formal notice of the deadline for filing proofs of claim, the time to object to confirmation, or the confirmation hearing was not discharged); *Arch Wireless,* 332 B.R. at 251 ("[I]f a creditor is not given adequate notice of the bar date for filing claims, the hearing on plan confirmation or the order confirming a plan in a Chapter 11 case, the creditor may not be bound by the plan provisions and its claim is not discharged.") (citations omitted); *OakFabco, Inc. v. American Standard, Inc. (In re Kewanee Boiler Corp.),* 297 B.R. 720, 730 (Bankr. N.D. Ill. 2003) ("A creditor's claim cannot be subjected to a confirmed plan that it had no opportunity to dispute.").

-15-

The Hospital's transmission of notice to Ms. Landrum satisfies the requirements of due process.  "[W]hen the name and address of an interested party is known, due process requires notice by mail or other means as certain to ensure actual notice."  *In re Blinder, Robinson & Co., Inc.,* 124 F.3d 1238, 1243 (10th Cir. 1997) (internal quotation marks and citations omitted).  The Hospital sent notice of the commencement of the Bankruptcy Case, notice of the hearing on confirmation, and notice of the bar date for filing administrative claims to Ms. Landrum at the Post Office box she regularly used during that time.  KCC filed certificates of mailing in the Bankruptcy Case with respect to each of these notices.[9]  Ms. Landrum nevertheless disputes having received any of these notices, "'[b]ut due process does not require that the interested party actually receive the notice.'"  *Blinder,* 124 F.3d at 1243 (quoting *United States v. Clark,* 84 F.3d 378, 380 (10th Cir. 1996) (remaining citation omitted)).  *See also United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir. 1994) (same).

Moreover, proof that a notice was properly addressed and mailed is entitled to the presumption of receipt.  *See Hagner v. United States,* 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932) ("proof that a letter properly directed was placed in a post office crates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (citing *Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S. Ct. 382, 28 L. Ed. 395 (1884)).[10]

---

[9] The Hospital also provided notice of the confirmation hearing and of the Administrative Claims Bar Date by publication.  Notice by mail coupled with notice by publication may be sufficient to satisfy the requirements of due process.  *See Blinder,* 124 F.3d at 1243 (finding that mailing notice combined with publishing notice in newspapers of general circulation were reasonably calculated to apprise interested parties and afford them an opportunity to be heard, and, therefore, satisfied due process).

[10] *See also, Witt v. Roadway Express,* 136 F.3d 1424, 1429-30 (10th Cir. 1998) ("A rebuttable presumption of receipt does arise on evidence that a properly addressed piece of mail is placed in the care of the postal service.") (citation omitted).  *See also Nikwei v. Ross School of Aviation, Inc.,* 822 F.2d 939, 941 (10th Cir. 1987) ("A proper mailing of the summons and complaint raises a rebuttable presumption of due delivery to the addressee.") (citation omitted).

The presumption of receipt may be established through a certificate of mailing. *See Denmon v. Runyon,* 208 B.R. 225 (D. Kan. 1997) (presumption of receipt of bankruptcy filing arose from certificate of mailing from the bankruptcy court); *American Properties,* 30 B.R. at 238 (certificate of service of the mailing in the Court file demonstrated proof of mailing and presumed receipt). The mere denial of receipt by the addressee generally is insufficient to rebut the presumption of receipt. *See Denmon,* 208 B.R. at 227-28 ("an allegation of denial of receipt does not, by itself, rebut the presumption of proper notice") (citations omitted); *In re Loomas,* 2013 WL 5615943 at *4 n. 38 (10th Cir. BAP Oct. 15, 2013) ("mere denial of receipt alone does not rebut the presumption that the mailed item was received.") (citing *Bosiger v. U.S. Airways,* 510 F.3d 442, 452 (4th Cir. 2007)). Especially in bankruptcy cases, "[i]f a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." *Osborn v. Ricketts (In re Ricketts),* 80 B.R. 495, 497 (9th Cir. BAP 1987). Ms. Landrum has not offered sufficient evidence to rebut the presumption of receipt of the notices sent to her in connection with the Bankruptcy Case. The Court therefore concludes that notice of the Bankruptcy Case, the confirmation hearing, and the Administrative Claims Bar Date satisfies the due process requirement to provide notice by a method reasonably calculated to give actual notice to the affected parties.

### ii. *Adequacy of the Content of the Notice*

The final element necessary to satisfy due process is whether the content of the notice reasonably conveyed the required information. *See Mullane,* 339 U.S. at 314 ("The notice must be of such nature as reasonably to convey the required information.") (citation omitted). This due process requirement applies equally to bankruptcy cases. *Barton Indus.,* 104 F.3d at 1246

(citations omitted). "[A] creditor's claim is not subject to a confirmed bankruptcy plan when the creditor is denied due process because of inadequate notice." *Id*. at 1245 (citing *Reliable Elec.*, 726 F.2d at 622-23).

The Confirmation Notice included the Plan Injunction language in bold type. The Bar Date Notice and Confirmation Notice together gave Ms. Landrum notice that apprised her that failure to assert her administrative claim in the Bankruptcy Case would bar her from asserting her claim based on the Medical Procedure against the Hospital and its employees. Whether the content of these notices adequately conveyed the required information to render the Plan Injunction enforceable consistent with the due process clause turns on whether Ms. Landrum knew or had reason to investigate the relationship between the Hospital and Dr. Moolamalla.

As a potential creditor, Ms. Landrum had "a responsibility to take an active role in protecting [her] claim[]." *Cf. Barton Indus.,* 104 F.3d at 1246 (citing *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1267 (10th Cir. 1988)). In this context, Ms. Landrum's responsibility would oblige her to investigate whether the Plan Injunction would affect her claim against Dr. Moolamalla if she was on inquiry notice that Dr. Moolamalla may have been an employee or otherwise connected with the Hospital. *See In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1431 (9th Cir. 1990) (holding that due process was satisfied where creditor "received information about the bankruptcy proceedings that was sufficient to put it on inquiry notice."); *DPWN Holdings (USA), Inc., v. United Air Lines, Inc.,* 871 F. Supp.2d 143, 158 (E.D.N.Y. 2012) (holding that creditors have a "responsibility to diligently investigate what claims they may have against the debtor."). A person is on inquiry notice where a reasonably prudent person with knowledge of particular facts would make inquiry into the existence of other facts. *See Cities Serv. Oil Co. v. Adair*, 273 F.2d 673, 676 (10th Cir. 1959) (defining inquiry notice as "when a party has knowledge of facts which would

lead an ordinarily prudent person to make inquiry which would disclose the existence of other facts, the knowledge amounts to notice of those other facts."). *See also Sw. Petroleum Corp. v. Udall*, 361 F.2d 650, 657 (10th Cir. 1966) (holding that "the test for imputing notice of a superior right is generally whether facts are sufficient to put an ordinarily prudent man on inquiry, an inquiry which, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property."); *In re Archibald*, 482 B.R. 378, 397–98 (Bankr. D. Utah 2012) ("Inquiry notice occurs 'when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part.'" (quoting *First American Title Insurance Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998))).

Ms. Landrum believed that all doctors worked independently of all hospitals based on an experience where her brother paid a hospital bill but was still billed separately by the doctor. Based on this mistaken belief, Ms. Landrum concluded there was no reason to inquire into whether the Plan Injunction affected her claim against Dr. Moolamalla. A reasonably prudent person who had visited the Center and interacted with the staff and Dr. Moolamalla as much as Ms. Landrum would have concluded that Dr. Moolamalla likely had some substantial relationship with GCRMC and may have been its employee during the time Ms. Landrum received the Medical Procedure. Ms. Landrum disregarded the physical connections between the MOB and the GCRMC main building. She disregarded the fact that "Gerald Champion Regional Medical Center" was on the badges of all staff working in the Center, including doctors, and on the white coat of all doctors working at the Center. A reasonably prudent person would not have disregarded those facts. Accordingly, Ms. Landrum was on inquiry notice that Dr. Moolamalla may have been an employee of GCRMC. The Court's conclusion is buttressed by the fact that Ms. Landrum and her attorney thought the possibility that Dr. Moolamalla had some substantial relationship with GCRMC was enough to

send GCRMC a request for Ms. Landrum's medical records generated from treatment at the Center two months before the Administrative Claim's Bar Date. Even a minimal inquiry would have disclosed that Dr. Moolamalla was an employee of the Hospital.

Based on the foregoing, GCRMC's notice to Ms. Landrum of the Plan and the Plan Injunction satisfied due process. Ms. Landrum's claim against Dr. Moolamalla asserted in the State Court Action is barred by the Plan Injunction.

### D. The Court will not hold Ms. Landrum in contempt of court.

The Court has the authority to hold parties before it in civil contempt where "necessary or appropriate." *See* 11 U.S.C. § 105(a); *In re C.W. Min. Co.*, 477 B.R. 176, 194 (B.A.P. 10th Cir. 2012), aff'd, 749 F.3d 895 (10th Cir. 2014) ("A bankruptcy court may exercise its civil contempt power for violation of the automatic stay so long as doing so is consistent with the purposes of civil contempt orders and doing so is within the limits of the bankruptcy court's § 105(a) powers."). The Court's use of its civil contempt powers may be used "(1) to compel or ensure compliance with a court order; and (2) to compensate parties for losses caused by the contemnor's refusal to abide by a court order." *In re C.W. Min. Co.*, 477 B.R. at 194–95. Here, Ms. Landrum genuinely did not believe her claim against Dr. Moolamalla or the State Court Action was barred by the Plan Injunction. While that belief may have been unreasonable in light of Ms. Landrum's experience with Dr. Moolamalla, her visits to the GCRMC campus, and the notices she received of the Plan and Plan Injunction, the belief was sincerely held. The Court is confident that Ms. Landrum will not pursue the State Court Action further or otherwise attempt to assert her claim against Dr. Moolamalla absent reversal of this Court's decision on appeal. Accordingly, it is neither necessary nor appropriate for the Court to use its civil contempt powers to compel compliance with the Court's orders. Further, Ms. Landrum and the Hospital had a genuine dispute regarding whether

-20-

the Plan Injunction could and did bar Ms. Landrum's claim against Dr. Moolamalla.  Once the Hospital's counsel informed Ms. Landrum that it believed her claim was barred by the Plan Injunction, she immediately agreed to a stay of the State Court Action and filed this adversary proceeding.  In light of these facts, the Court concludes it is neither necessary nor appropriate for the Court to compensate the Hospital for is losses incurred in defending the State Court Action or this adversary proceeding.

<u>Conclusion</u>

Based on the foregoing, the Court will enter an order granting in part and denying in part Ms. Landrum's request for declaratory judgment and granting in part and denying in part the Hospital's counter-claim.  The order will provide that (i) § 362(a) does not enjoin the State Court Action; (ii)§ 524(a) does not enjoin the State Court Action; (iii) the Plan, specifically the Plan Injunction, enjoins the State Court Action; (iv) Plaintiff waived her claim against Dr. Moolamalla by not filing an administrative claim in the Bankruptcy Case; (v) Plaintiff did not willfully violate § 362(a); and (vi) the Hospital's request that the Court hold Ms. Landrum in civil contempt is denied.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  November 7, 2016

COPY TO:

Miguel O Garcia
John R. Hakanson, P.C.
Attorney for Plaintiff
307 East 11th Street
Alamogordo, NM 88310

Craig H. Averch
Roberto Kampfner
Andrew Macintosh
White & Case, LLP
Attorney for Defendants
555 S. Flower Street, Suite 2700
Los Angeles, CA 90071-2433